No. 23-55611

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ROBERT H. NEWELL,
*Plaintiff-Appellant,*

v.

GAVIN NEWSOM, in his official capacity as Governor of the State of California, and ROB BONTA, in his official capacity as Attorney General of the State of California,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
The Honorable Fernando L. Aenlle-Rocha
Case No. 2:20-cv-08935

## BRIEF OF PROPOSED *AMICUS CURIAE* EUGENE VOLOKH
## IN SUPPORT OF AFFIRMING THE DECISION BELOW

Eugene Volokh*
First Amendment Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

* Counsel would like to thank Scott Bays, a UCLA School of Law student who worked on the brief.

# Table of Contents

Table of Contents ...................................................................i

Table of Authorities............................................................ iii

Interest of *Amicus Curiae* .................................................1

Summary of Argument........................................................1

Argument..............................................................................3

    I.   Standard of Review....................................................3

    II.  Newell's Circumstances Do Not Merit Pseudonymity................3

        A.  Pseudonymity is only allowed for plaintiffs who face "unusual" risks ........................................................3

        B.  Pseudonymity is not warranted here, because Newell only alleges a threat of professional and economic harm ........................................................5

    III. The Public's Interest in Open Access to Newell's Identity Outweighs His Desire for Pseudonymity ...................................8

        A.  Pseudonymity hinders public supervision of the courts .......8

          1. Pseudonymity interferes with reporters' and researchers' ability to fully inform the public .....................10

          2. Pseudonymity interferes with the monitoring and tracking of vexatious litigants ............................................11

          3. Pseudonymity interferes with transparency in state revenue spending .................................................12

        B.  Pseudonymity hinders defendants' legal defenses..............13

C.   Pseudonymity hinders people's ability to take a better measure of Newell as a prospective employee or business associate ............................................... 14

IV.  Retroactive Pseudonymization Is Especially Inappropriate ..... 15

V.   Though Pseudonymity May Be More Available in Purely Legal Challenges, the Presumption Against Pseudonymity Remains Even in Such Cases .................................... 17

Conclusion ........................................................................ 19

Certificate of Compliance ...................................................... 20

Certificate of Service ......................................................... 21

# Table of Authorities

## Cases

*Brnovich v. Biden*, 2021 WL 7630109 (D. Ariz. Dec. 15, 2021) ............... 6

*Coe v. County of Cook*, 162 F.3d 491 (7th Cir. 1998) ................................. 9

*Cowley v. Pulsifer*, 137 Mass. 392 (1884) .................................................. 9

*Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016) ........................................................................................... 8

*Del Nero v. Allstate Ins. Co.*, 2022 WL 1618839 (D. Nev. May 23, 2022) ............................................................................................. 12

*Doe 1 v. Northshore Univ. Healthsystem*, No. 21-03242 (7th Cir. Dec. 13, 2021) ....................................................................................... 18

*Doe v. Amazon.com, Inc.*, 2011 WL 13073281 (W.D. Wash. Dec. 23, 2011) ............................................................................................. 8

*Doe v. Ayers*, 789 F.3d 944 (9th Cir. 2015) ................................................ 7

*Doe v. Bell Atl. Business Sys. Servs.*, 162 F.R.D. 418 (D. Mass. 1995) ................................................................................................. 15

*Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869 (7th Cir. 1997) .............................................................................. 3, 19

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D. N.Y. 2006) .................................... 15

*Doe v. FBI*, 218 F.R.D. 256 (D. Colo. 2003) ............................................ 15

*Doe v. Kamehameha Sch.*, 596 F.3d 1036 (9th Cir. 2010) ........................ 7

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) .................................... 13, 16

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) .............................. 9, 13

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ............................................ 5

*Doe v. United States HHS*, 517 F. App'x 548 (9th Cir. 2013) .................. 4

*Doe v. United States*, 2020 WL 7388095 (E.D. Cal. Dec. 16, 2020) ........................................................................................ 5

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) .............................................................................. 3, 5, 7

*Ergo Sci., Inc. v. Martin*, 73 F.3d 595 (5th Cir. 1996) ........................... 14

*Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) ..................... 14

*Fernandez v. State*, 361 F. App'x 859, 859 (9th Cir. 2010) ...................... 4

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ........... 15, 16

*Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831 (7th Cir. 2013) ................ 9

*Kansky v. Coca-Cola Bottling Co.*, 492 F.3d 54 (1st Cir. 2007) ........ 15, 16

*M.M. v. Zavaras*, 139 F.3d 798 (10th Cir. 1998) ............................... 12, 13

*NBC Subsidiary (KNBC-TV) v. Superior Court*, 980 P.2d 337 (Cal. 1999) .......................................................................................... 9

*Newell v. Garland*, 142 S. Ct. 120 (2021) ............................................... 11

*Newell v. Garland*, 846 F. App'x 523 (9th Cir. 2021) ...................... 11, 17

*Newell v. Newsom*, 2021 WL 3625367 (9th Cir. June 11, 2021) ............. 11

*Newell v. Newsom*, 2022 WL 3700846 (9th Cir. Aug. 26, 2022) ....... 11, 16

*Newell v. Newsom*, 2023 WL 4557444 (Cal. Ct. App. Jul. 17, 2023) ................................................................................................ 11, 17

*Newell v. Newsom*, No. S280146 (Cal. July 26, 2023) ........................... 11

*NRA of Am., Inc. v. Bondi*, 2018 WL 11014101 (N.D. Fla. May 13, 2018) ........................................................................................... 18

iv

*O.L. v. Jara*, 2022 WL 1499656 (9th Cir. May 12, 2022) ....................... 12

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) ................ 9

*Publius v. Boyer-Vine*, 321 F.R.D. 358 (E.D. Cal. 2017) ................... 17, 18

*Qualls v. Rumsfeld*, 228 F.R.D. 8 (D.D.C. 2005) ................................. 9, 10

*Roe v. Skillz, Inc.*, 858 F. App'x 240 (9th Cir. 2021) ................................ 6

*Smith v. Corizon Healthcare*, 2016 WL 3538350 (E.D. Cal. June
    28, 2016) ........................................................................................ 12

*Smith v. Patel*, 2009 WL 3046022 (C.D. Cal. Sept. 18, 2009) ................. 5

*Southern Methodist Univ. Ass'n of Women Law Students v.
    Wynne and Jaffe*, 599 F.2d 707 (5th Cir. 1979) ............................ 6, 13

*Stankiewicz v. Universal Commerce Corp.*, 2017 WL 3671040
    (S.D. N.Y. Aug. 9, 2017) ................................................................. 16

*United States v. Doe (Doe II)*, 488 F.3d 1154 (9th Cir. 2007) ................. 3

*United States v. Doe*, 655 F.2d 920 (9th Cir. 1980) .................................. 7

*United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008) ......................... 4

## Statutes and Regulations

Fed. R. Civ. P. 10(a) ................................................................................... 3

## Other Authorities

*Candidates for Degrees*, https://yale2020.yale.edu/candidates-
    degrees/law-school .......................................................................... 14

Tom Isler, *White Paper: Anonymous Civil Litigants*, Reporters
    Committee for Freedom of the Press (Nov. 19, 2015) ...................... 11

## Interest of *Amicus Curiae*[1]

Eugene Volokh is the Gary T. Schwartz Distinguished Professor of Law at UCLA School of Law, where he has taught First Amendment law and a First Amendment *amicus curiae* brief clinic. Volokh's interest in this case is in the sound development of the law of pseudonymous litigation, a subject on which he has written a detailed article (Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353 (2022)). Volokh has filed a separate motion for leave to file this brief (ECF No. 10, Sept. 1, 2023).

## Summary of Argument

The district court did not abuse its discretion in denying Appellant Robert Newell's request to retroactively pseudonymize the court records in this case.

1. The risk of being fired from a job, or not hired for a new job, is not the type of unusual harm that would merit pseudonymity; such a risk of professional and economic harm is present for many plaintiffs and even

---

[1] No party or party's counsel has authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. No person has contributed money that was intended to fund preparing or submitting the brief, except that UCLA School of Law paid the expenses involved in filing this brief.

1

more defendants. Because courts must treat like cases alike, granting pseudonymity based on such a commonplace consequence would set a dangerous precedent—a precedent that would shift our justice system from one of presumptive openness to one of presumptive pseudonymity.

2. Access to litigants' identities is in the public interest because it promotes public supervision of the court system and allows citizens, journalists, researchers, and future opposing parties to research the litigants' motivations and their past litigation histories.

3. Newell's identity has already been revealed in this litigation, as a result of Newell's own choice not to seek pseudonymity at the outset. Attempting to retroactively pseudonymize the case would thus tend to erode the norm of public access, without providing much of a remedy to Newell.

4. Though the presumption against pseudonymity may be weaker in facial challenges like this case, it still remains a presumption that can only be rebutted by a showing of an unusual risk of harm. No such showing has been made in this case.

For these reasons, this Court should affirm the decision below.

# Argument

## I.  Standard of Review

This Court reviews a "district court's decision not to allow plaintiffs to remain anonymous . . . for an abuse of discretion." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). It "may reverse the district court's decision if the district court relied on an erroneous view of the law, made a clearly erroneous assessment of the evidence, or struck an unreasonable balance of the relevant factors." *Id.*

## II.  Newell's Circumstances Do Not Merit Pseudonymity

### A. Pseudonymity is only allowed for plaintiffs who face "unusual" risks

"[T]he identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity." *United States v. Doe (Doe II)*, 488 F.3d 1154, 1155 n.1 (9th Cir. 2007). Because "[t]he people have a right to know who is using their courts," *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997), the Federal Rules of Civil Procedure require that every complaint include all parties' names. Fed. R. Civ. P. 10(a).

This "unusual case" requirement means that pseudonymity is unavailable when a litigant faces the sort of harm that other litigants routinely face. Thus, for instance, this Court has affirmed the denial of a prisoner's pseudonymity request on the grounds that threats of prison violence generally present "no special or unusual circumstance[] that justifie[s] protection of [a litigant's] identity." *Fernandez v. State*, 361 F. App'x 859, 859 (9th Cir. 2010). In particular, a prisoner's conviction as a sex offender does not justify pseudonymity because the concern about fellow prisoners' attacking sex offenders "is equally present for all similarly situated sex offenders" in prison. *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008). Similarly, the threat that a litigant's mental health problems may become public and cause stigma is an "insufficiently 'unusual' circumstance[]" to merit pseudonymity, because all litigants involved in cases concerning mental health face the same risk. *Doe v. United States HHS*, 517 F. App'x 548, 549 (9th Cir. 2013).

The same is true for litigants fearful that a civil rights claim would mark them as litigious employees; "vague generalizations about risks that all civil rights plaintiffs bear" would permit "every plaintiff alleging race, gender or some other form of invidious discrimination [to have] the

4

right to litigate . . . pseudonymously." *Smith v. Patel*, 2009 WL 3046022, at *2 (C.D. Cal. Sept. 18, 2009). Pseudonymity should be denied where a "[c]ourt regularly sees similar allegations and Plaintiff has failed to show that his case is unusual." *Doe v. United States*, 2020 WL 7388095, at *3 (E.D. Cal. Dec. 16, 2020).

And this makes sense: Courts are supposed to treat like cases alike, so if a litigant is allowed to be pseudonymous in a case that is not "unusual," the many other litigants who are in the same boat will be entitled to pseudonymity. Such a system of frequent pseudonymous litigation would undermine the "clear and strong First Amendment interest" in "[p]ublic access" to judicial proceedings, including access to "the identity of the parties." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

## B. Pseudonymity is not warranted here, because Newell only alleges a threat of professional and economic harm

In particular, threats of professional and economic harm rarely merit pseudonymity because "threats of termination and blacklisting are perhaps typical methods by which employers retaliate against employees who assert their legal rights." *Does*, 214 F.3d at 1071. Indeed, *Does* favorably cites *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne and Jaffe*, 599 F.2d 707 (5th Cir. 1979), where pseudonymity was

denied to lawyers fearing retaliation by "current employers, prospective future employers and an organized bar," but the court rejected pseudonymity because plaintiffs "face[d] no greater threat of retaliation than the typical plaintiff alleging Title VII violations." *Id.* at 713.

Likewise, this Court has rejected pseudonymity for a litigant who argued that her claims related to "compulsive gambling . . . mental health . . . suicidal ideations, and personal harms she suffered" will "negatively affect her professional standing"—such a hazard "is not so out of the norm" as to warrant pseudonymity, even where the litigant's "work requires interaction with the public who may 'weaponize' [this personal information] against" the litigant. *Roe v. Skillz, Inc.*, 858 F. App'x 240, 241 (9th Cir. 2021); *see also Brnovich v. Biden*, 2021 WL 7630109, at *2 (D. Ariz. Dec. 15, 2021) (denying pseudonymity to a plaintiff concerned about employer retaliation due to his COVID-19 vaccination status, because the plaintiff did not allege "allege physical or psychological injury," and because the risk of "termination from his job" did not "rise[] to the level of 'extraordinary'" such that pseudonymity may be warranted). Nor is this logic limited to cases where plaintiffs sue their own employers; *Roe v. Skillz, Inc.*, for instance, was not an employment case.

This Court has prescribed four factors to consider when determining whether to permit pseudonymity: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation," and "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Does*, 214 F.3d at 1068 (cleaned up). The first two factors—the severity of the threatened harm and the reasonableness of those fears—"are intricately related and should be addressed together." *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1043 (9th Cir. 2010). Likewise, "vulnerability to such retaliation" is linked to the first two elements, because the "such retaliation" refers to vulnerability to "sever[e]" retaliation.

The cases cited above show that the risk of ordinary economic and professional judgment based on a person's past lawsuits is not sufficiently "sever[e]" to justify pseudonymity. Pseudonymity may be available when "plaintiffs fear extraordinary retaliation, such as deportation, arrest, and imprisonment," *Does*, 214 F.3d at 1071, "serious bodily harm," *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980), or "repeated sexual assault in prison," *Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015). But

being subject even to "industry blacklisting and loss of livelihood" is not "at all similar to the truly grave harms plaintiffs feared in [*Does*]," and is a harm "of an order of magnitude less." *Doe v. Amazon.com, Inc.*, 2011 WL 13073281, at *3 (W.D. Wash. Dec. 23, 2011).

The risk that employers will not want to do business with Newell—just as employers might more generally be hesitant to interact with those they see as unreasonably litigious—thus does not suffice to justify pseudonymity. At the very least, the district court did not abuse its discretion in so concluding.

## III. The Public's Interest in Open Access to Newell's Identity Outweighs His Desire for Pseudonymity

### A. Pseudonymity hinders public supervision of the courts

The public generally has a right to access judicial records, "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice," *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016), which is why there is a "strong presumption in favor of public access to court records," *id.* And this includes access to the parties' names: "Pseudonymous litigation undermines the public's right of access to judicial

8

proceedings. The public has an interest in knowing the names of the litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (citation omitted). "We have criticized the overuse of pseudonyms in federal litigation, pointing out that the public has a right to know who is utilizing the federal courts that its tax dollars support." *Coe v. County of Cook*, 162 F.3d 491, 498 (7th Cir. 1998).

"It is desirable that the trial of causes should take place under the public eye . . . because . . . every citizen should be able to satisfy himself with his own eyes as to the mode in which" a court performs its duties. *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.). This was originally said as to the fair report privilege, but courts have recognized that this equally applies to access to court records, *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1069 (3d Cir. 1984); *NBC Subsidiary (KNBC-TV) v. Superior Court*, 980 P.2d 337, 351 n.14 (Cal. 1999), including access to information about "who's using the courts," *Goesel*, 738 F.3d at 833; *see also Qualls v. Rumsfeld*, 228 F.R.D. 8, 13 (D.D.C. 2005). Allowing the public to "assess the merits of the lawsuit and the quality of the courts" provides

"a legitimate reason to require" parties to litigate in their own names, which "benefit[s] . . . the public and the media." *Qualls*, 228 F.R.D. at 13. And allowing one litigant to be pseudonymous means that other similarly situated litigants would be entitled to the same treatment; allowing pseudonymity to Newell would thus affect a wide range of cases.

### 1. Pseudonymity interferes with reporters' and researchers' ability to fully inform the public

In particular, by accessing parties' names, reporters and researchers can more thoroughly investigate cases and the parties bringing them, thus keeping the public informed about the functioning of the judicial system. For instance, if the case is part of a broader trend of litigation in the courts, people can investigate the parties to understand their connection to the broader trend.

Or they can research a litigant's background to investigate any possible business, political, or ideological interests in pursuing the case. A party's identity may also reveal that they have made similar allegations in the past, that there is some special reason to trust or distrust such allegations, or that the judge might be biased in favor of or against the litigant. Pseudonymity "prohibits journalists from identifying family

members, friends, employers, coworkers, classmates and other acquaint-ances who may help the journalist put a given dispute in context." Tom Isler, *White Paper: Anonymous Civil Litigants*, Reporters Committee for Freedom of the Press (Nov. 19, 2015), https://www.rcfp.org/journals/news-media-and-law-fall-2015/white-paper-anonymous-civil-l/#_ftn26.

### 2. Pseudonymity interferes with the monitoring and tracking of vexatious litigants

Public access to parties' names also helps future litigants and courts determine whether a litigant may be a vexatious litigant. Newell has filed at least two lawsuits in this circuit and one in California state court, all of which have been dismissed. *Newell v. Newsom*, 2022 WL 3700846 (9th Cir. Aug. 26, 2022); *Newell v. Newsom*, 2023 WL 4557444 (Cal. Ct. App. Jul. 17, 2023); *Newell v. Garland*, 846 F. App'x 523 (9th Cir. 2021). An earlier iteration of this case has led to yet another Ninth Circuit appeal, *Newell v. Newsom*, 2021 WL 3625367 (9th Cir. June 11, 2021), that failed on jurisdictional grounds. In *Newell v. Garland*, Newell filed a petition for certiorari, which was denied. 142 S. Ct. 120 (2021). He likewise filed a petition in the California *Newell v. Newsom* case, which was denied as well. No. S280146 (Cal. July 26, 2023). If Newell files enough further cases in the future, he might qualify as a vexatious litigant.

11

But in such a future case, the court or the opposing party would typically realize that the plaintiff is a vexatious litigant by searching public records for their past cases. Litigants' using "initials or pseudonyms" "makes it difficult to track [their] cases." *O.L. v. Jara*, 2022 WL 1499656, at *3 n.1 (9th Cir. May 12, 2022). Knowing a "[p]laintiff's identity is relevant . . . for tracking vexatious litigants," *Smith v. Corizon Healthcare*, 2016 WL 3538350, at *3 (E.D. Cal. June 28, 2016), and permitting pseudonymity "could act to conceal future vexatious litigation or behavior," *Del Nero v. Allstate Ins. Co.*, 2022 WL 1618839, at *3 (D. Nev. May 23, 2022). This is yet another reason supporting the presumption against pseudonymous litigation.

### 3. Pseudonymity interferes with transparency in state revenue spending

Because Newell sued California state officials, California taxpayers funded the defense in this case. "[T]he public certainly has a valid interest in knowing how state revenues are spent," and allowing a plaintiff pseudonymity in such an instance would cause "prejudice to the public interest." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). For this reason, the public interest in knowing plaintiffs' identities "is heightened . . . [when] Defendants are public officials and government bodies."

*Doe v. Megless*, 654 F.3d 404, 411 (3d Cir. 2011); *see also Pub. Citizen*, 749 F.3d at 274 ("[T]he public interest in the underlying litigation is especially compelling given that Company Doe sued a federal agency.").

*S. Methodist Univ. Ass'n of Women L. Students* does suggest that pseudonymity is more important in lawsuits against private entities, because "[w]hile such suits involve no injury to the Government's 'reputation,' the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm." 599 F.2d at 713. But on balance the arguments about the importance of knowing the full story behind lawsuits against the government, recognized in *M.M. v. Zavaras*, *Megless*, and *Pub. Citizen*, should suffice to justify the presumption that plaintiffs must disclose their names in such lawsuits, even absent the concern about reputational harm to defendants.

## B. Pseudonymity hinders defendants' legal defenses

By making it more difficult to research a litigant's past cases, pseudonymity can also hinder future defendants' legal defenses. Being able to easily find a plaintiff's past litigation history can help defendants deter-

mine, for instance, whether there were findings in the litigant's past law-suits that may have collateral estoppel effects. Likewise, a plaintiff's past litigation history can show that the plaintiff had made substantive or jurisdictional arguments in past cases that are inconsistent with the arguments in the current case. But "without [a party's] identity in the public record, it is difficult to apply legal principles of res judicata and collateral estoppel," *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000)—and likewise for similar doctrines, such as judicial estoppel, which "prevents a party from asserting a position . . . contrary to a position previously taken [by the party and relied on by a court] in . . . some earlier proceeding," *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).

## C. Pseudonymity hinders people's ability to take a better measure of Newell as a prospective employee or business associate

Newell was apparently trained as a lawyer, *see Candidates for Degrees*, https://yale2020.yale.edu/candidates-degrees/law-school, and his past litigation bears on his acumen and professional judgment. Even if he is applying for a job outside the legal profession, employers evaluating his intellect or thoughtfulness may want to consider his performance in these

cases. This too counsels against allowing pseudonymity absent an especially strong reason.

## IV. Retroactive Pseudonymization Is Especially Inappropriate

Once a litigant's identity has been publicly revealed—especially as a result of the litigant's own actions—the arguments for pseudonymity become even weaker. Where "[t]he district court opinion has already been made publicly available . . . [i]t is simply too late to impose confidentiality," *Kansky v. Coca-Cola Bottling Co.*, 492 F.3d 54, 56 n.1 (1st Cir. 2007), because "whatever protection [a litigant] might have gained . . . is no longer realistically available," *Doe v. Del Rio*, 241 F.R.D. 154, 162 n.15 (S.D. N.Y. 2006). In these instances, "request[s] for anonymity [are] effectively moot." *Doe v. Bell Atl. Business Sys. Servs.*, 162 F.R.D. 418, 422 (D. Mass. 1995). Imposing retroactive pseudonymity is "a futile act." *Doe v. FBI*, 218 F.R.D. 256, 260 (D. Colo. 2003).

When information "resides on the highly accessible databases of Westlaw and Lexis," a court "simply [does] not have the power . . . to make what has thus become public private again." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). "Once the cat is out of the bag, the

ball game is over." *Id.* at 144 n.11. "The fact that [a litigant] now believe[s] that they suffered economic harm . . . is not a basis to assign a pseudonym retroactively." *Stankiewicz v. Universal Commerce Corp.*, 2017 WL 3671040, at *1 (S.D. N.Y. Aug. 9, 2017). (*Kansky* and *Gambale* were discussing retroactive sealing and redaction generally, but their logic applies equally to retroactive sealing and redaction of a party's name.)

If "[a]t no point has [a litigant's] identity been confidential" in this litigation or otherwise, there is less basis for retroactive pseudonymity. *Megless*, 654 F.3d at 410. In such instances, this Court should "question the value that pseudonymity would have for [a litigant]" given that "the use of a pseudonym in this disposition will have limited effect in concealing" his initiation of this case and others. *Stoterau*, 524 F.3d at 1013.

These principles apply fully here. The consequence Newell seeks to avoid—public exposure of his involvement in this litigation—has already occurred. Newell's identity is available on Westlaw and Lexis. *See, e.g.*, *Newell v. Newsom*, 2022 WL 3700846 (9th Cir. Aug. 26, 2022) (an opinion in this case); *Newell v. Newsom*, 2023 WL 4557444 (Cal. Ct. App. Jul. 17,

2023) (an opinion from a similar state court case); *Newell v. Garland*, 846 F. App'x 523 (9th Cir. 2021) (an opinion from an additional federal case).

Searching for "Robert H. Newell" in the free Google Scholar service (http://scholar.google.com) likewise yields these opinions, as well as a district court opinion and the Supreme Court's denial of certiorari in one of the cases. Searching for "Robert H. Newell" in Google likewise yields dockets and opinions from various of his cases, including the case below. *See, e.g.*, https://www.law360.com/cases/5f74c1273206a61e47a72e10; https://www.pacermonitor.com/public/case/36498486/Robert_H_Newell_v_Gavin_Newsom_et_al. Allowing retroactive pseudonymization would thus impose considerable costs, for the reasons discussed in Parts II and III—especially since such permission would set a precedent for the future—while providing little corresponding benefit.

## V.  Though Pseudonymity May Be More Available in Purely Legal Challenges, the Presumption Against Pseudonymity Remains Even in Such Cases

The presumption against pseudonymity may be weaker in facial challenges to government actions where the litigant's identity generally does not bear on analyzing the substantive legal questions. *See Publius v. Boyer-Vine*, 321 F.R.D. 358, 365 (E.D. Cal. 2017) (permitting plaintiffs to

proceed anonymously in a First Amendment challenge to a California law).

But even in purely legal challenges, pseudonymity is still an exception which requires some positive justification. *See, e.g.*, *NRA of Am., Inc. v. Bondi*, 2018 WL 11014101, at *4 (N.D. Fla. May 13, 2018) (denying plaintiffs pseudonymity in a Second Amendment challenge to a Florida law because they did not "identif[y] any information of 'utmost intimacy' that would be revealed if [plaintiffs] were forced to use their real names."). Indeed, even in *Publius*, where the court allowed pseudonymity on the basis "that being forced to disclose [Plaintiff's] identity would eliminate his [First Amendment] right to continue engaging in anonymous political speech," *Publius*, 321 F.R.D. at 361, the court recognized that "the possibility of [Plaintiff's] termination from his employment [was not] a persuasive factor weighing in favor of anonymity," *id.* at 362. While there is a First Amendment right to anonymous speech, there is no general First Amendment right to anonymous litigation.

Likewise, in *Doe 1 v. Northshore Univ. Healthsystem*, No. 21-03242 (7th Cir. Dec. 13, 2021), the Seventh Circuit affirmed the denial of pseudonymity to plaintiffs mounting a legal challenge to an employer's

COVID-19 vaccine mandate, because plaintiffs' concerns about being fired did "not justif[y] anonymity." And this makes sense: The principle that "[t]he people have a right to know who is using their courts," *Blue Cross & Blue Shield United of Wis.*, 112 F.3d at 872, applies to legal challenges and not just to fact-intensive challenges. Newell thus had to show a positive justification for retroactive pseudonymity, beyond a risk of professional consequences; he has not done so.

## Conclusion

Newell has not demonstrated sufficient grounds to warrant pseudonymity. The threat of professional and economic consequences is not unusual enough to turn this into the rare case that merits pseudonymity. That is particularly so since he seeks retroactive pseudonymity, which is even more disfavored than pseudonymity sought at the outset of a case. This Court should therefore affirm the decision of the district court.

Respectfully Submitted,

s/ Eugene Volokh

Gary T. Schwartz Professor of Law
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926

19

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,788 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century Schoolbook.

Dated: October 4, 2023

s/ Eugene Volokh

## Certificate of Service

I hereby certify that I electronically filed the foregoing Brief *Amicus Curiae* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 4, 2023.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: October 4, 2023

s/ <u>Eugene Volokh</u>